
JD Haas, Esq.
**J D Haas & Associates, PLLC**
9801 Dupont Avenue South, Suite 430
Bloomington, MN 55431
T: (952) 345-1025
F: (952) 854-1665
E: jdhaas@jdhaas@.com

Attorneys for Plaintiff,
*Amy Piepenbring*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| AMY PIEPENBRING, <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL ONE BANK (USA), N.A., <br><br> Defendant. | Case No.  2:18-cv-2596 <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> 1. TCPA, 47 U.S.C. § 227 *et. seq.* <br> 2. KCPA, K.S.A. § 50-623 *et. seq.* <br> 3. Intrusion Upon Seclusion <br><br> (Unlawful Debt Collection Practices) |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Amy Piepenbring ("Plaintiff"), through her attorneys, alleges the following against Capital One Bank (USA), N.A., ("Defendant" or "Capital One"):

### **INTRODUCTION**

1. Count I of Plaintiff's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain

1. unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Plaintiff's Complaint is based upon Kansas Consumer Protection Act ("KCPA"), K.S.A. 50-623 et seq., which protects consumers from suppliers who commit deceptive and unconscionable debt collection practices.

3. Count III of Plaintiff's Complaint is based upon the Invasion of Privacy – Intrusion Upon Seclusion, as derived from § 652B of the Restatement (Second) of Torts. § 652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns… that would be highly offensive to the reasonable person."

## JURISDICTION AND VENUE

4. Jurisdiction of the court arises under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

5. Venue is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

6. Defendants transact business here; therefore, personal jurisdiction is established.

## PARTIES

7. Plaintiff is a natural person residing in Kansas.

8. Plaintiff is a "consumer" as defined by *K.S.A. § 50-624(b).*

9. Defendant is a "supplier" as defined by *K.S.A. § 50-624(l).*

10. At all relevant times herein, Defendant, Capital One Bank (USA), N.A., was a company engaged, by use of mails and telephone, in the business of collecting a debt from Plaintiff which qualifies as a "consumer transaction," as defined by *K.S.A. § 50-624(c)*.

11. Defendant is a debt collector with its principal place of business located in Virginia. Defendant can be served with process through its agent, Corporation Service Company, at 1111 East Main Street, Richmond, Virginia 23219.

12. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

1. Defendant is attempting to collect an alleged debt from Plaintiff.

13. In or around February of 2018, Defendant began placing calls to Plaintiff's cellular phone number ending in 3335, in an attempt to collect an alleged debt.

14. The calls placed by Defendant mainly originated from (800) 955-6600. Upon information and belief, this phone number is owned, operated or controlled by Defendant or its agent(s).

15. On or about February 16, 2018, at 12:33 p.m., Plaintiff received a phone call from Defendant on her cell phone; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

16. During this conversation, Plaintiff spoke to a representative, who indicated that Defendant was attempting to collect a debt; Plaintiff clearly stated to the representative that she wanted Defendant to stop calling her.

17. That request was ignored as Plaintiff continued to receive phone calls from the Defendant throughout the month of February, March, April, May, June, July and August of 2018.

18. On or about March 5, 2018, at 12:11 p.m., Plaintiff received a call from Defendant on her cell phone; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

19. During this conversation, Plaintiff spoke to Defendant's representative and informed them that she was going through a rough financial time at the moment, and she could not make a payment.

20. Even though Capital One was aware that Plaintiff was going through a difficult time, it continued its assault of automated debt collection calls.

21. On or about March 19, 2018, at 4:15 p.m., Plaintiff received a call from Defendant on her cell phone; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

22. During this conversation, Plaintiff spoke to a representative, who indicated that Defendant was attempting to collect a debt; Plaintiff told the representative that she had gone through a divorce and could not afford to pay her bills. Plaintiff once again requested that Capital One stop calling her and stated that she would call Capital One when she could make a payment.

23. On or about May 21, 2018, at 9:10 a.m., Plaintiff received a call from Defendant on her cell phone; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

24. During this conversation, Plaintiff spoke to a representative, who indicated that Defendant was attempting to collect a debt; Plaintiff told the representative that she did not know why Capital One has cotniued to call her and that the calls were frustrating her. Plaintiff told the representative that she had already told Cpaital One she did not have any money to make a payment and she would call Capital One when she was able to make a payment.

25. On or about August 17, 2018, at 10:09 a.m., Plaintiff received a call from Defendant on her cell phone; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

26. During this conversation, Plaintiff spoke to a representative, who indicated that Defendant was attempting to collect a debt; Plaintiff told that she was not able to make a payment and if Capital One needed anything from her, they should send it in the mail only.

27. There were several occasions where the Defendant called the Plaintiff multiple times in one day.

    a. On or about January 19, 2018 Plaintiff received three (3) calls from Defendant at 8:05 a.m., 9:38 a.m., and 1:06 p.m.;

    b. On or about January 23, 2018 Plaintiff received four (4) calls from Defendant at 8:16 a.m., 9:27 a.m., 10:59 a.m., and 12:00 p.m.;

    c. On or about February 5, 2018, Plaintiff received three (3) calls from Defendant at 8:54 a.m., 12:25 p.m., and 3:26 p.m.;

    d. On or about February 7, 2018, Plaintiff received three (3) calls from Defendant at 8:15 a.m., 10:58 a.m., and 3:25 p.m.;

  e. On or about February 9, 2018, Plaintiff received three (3) calls from Defendant at 8:16 a.m., 9:38 a.m., and 3:20 p.m.

28. Plaintiff also received numerous pre-recorded voicemail messages on her cell phone from Defendant.

29. The Federal Communications Commission ("FCC") noted in its 2003 TCPA Order that a predictive dialer is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *2003 TCPA Order*, 18 FCC Rcd at 14091, para. 131.

30. The FCC further explained that the "principal feature of predictive dialing software is a timing function, not number storage or generation." *Id*.

31. Finally, the FCC stated that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *Id*. at 14091-92, paras. 132-33.

32. Defendant attempted to predict when Plaintiff was available by calling her at 3:57 p.m. (February 17, 2018), 4:09 p.m. (February 18, 2018), 3:39 p.m. (February 22, 2018), 4:17 p.m. (February 23, 2018), and 4:46 p.m. (February 25, 2018).

33. The Defendant's conduct of attempting to predict when Plaintiff was available is further illustrated throughout the call history between February 2018 and August 2018.

34. Between February 16, 2018 and August 17, 2018, Defendant called Plaintiff approximately two hundred and five (205) times after Plaintiff requested to not be called on her cell phone on five (5) separate occasions.

35. Defendant called Plaintiff approximately one-hundred fifty-five (155) times on his cellular phone after requesting to not be called on two (2) separate occasions.

36. Defendant's calls were excessive and done with the purpose of attempting to harass Plaintiff into making a payment on the account.

37. The calls violated the KCPA by:

    a. Engaging in unconscionable acts or practice in connection with a consumer transaction, (K.S.A § 50-627(a))

    b. Capital One knew that Plaintiff (1) Ms. Piepenbring was going through a financial difficulty, (2) Ms. Piepenbring was going through a divorce and could not make any payments, and (3) the constant phone calls were frustrating to Ms. Piepenbring because she requested not to be called on several occasions.

    c. As such, Capital One is liable under KCPA § 50-623 *et seq.*, for actual or statutory damages, which one is greater, and attorney fees and costs.

38. The conduct was not only willful but was done with the intention of causing Plaintiff such distress, so as to induce her to pay the debt.

39. Further, the conduct was done with such frequency so as to harass Plaintiff.

40. Plaintiff works as a sales person at a men's fashion store.

41. Plaintiff uses her cell phone for personal and work calls.

42. Plaintiff has a sixteen-year-old daughter that she cares for alone and has to use her cell phone to check up on her throughout the day.

43. The repeated phone calls from Defendant would interrupt Plaintiff's work causing her to lose focus on her current job.

44. Further, Plaintiff had recently gone through divorce proceedings that lasted approximately two (2) years.

45. The divorce proceedings took a financial and emotional toll on the Plaintiff.

46. Since the beginning of the divorce proceedings, Plaintiff has been the sole provider for herself and her daughter.

47. Defendant's continuous bombardment of automated phone calls even after Plaintiff had told Defendant about her divorce and her current financial situation, caused Plaintiff to suffer extreme emotional and mental pain and anguish.

48. As a result of Defendant's conduct, Plaintiff has sustained actual damages including but not limited to, stress, anxiety, embarrassment, emotional and mental pain and anguish.

## COUNT I

### (Violations of the TCPA, 47 U.S.C. § 227)

49. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50. Defendant violated the TCPA. Defendant's violations include, but are not limited to the following:

    a. Within four years prior to the filing of this action, on multiple occasions, Defendant violated TCPA 47 U.S.C. § 227 (b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called

       party is charged for the call.

  b. Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiff at Plaintiff's cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and as such, Defendants knowing and/or willfully violated the TCPA.

51. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendants knowingly and/or willfully violated the TCPA, Plaintiff is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT II

**(Violations of the Kansas Consumer Protection Act, 50-623 et seq.)**

52. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein.

53. Defendant violated the KCPA. Defendant's violations include, but are not limited to, the following:

  a. Defendant violated § 50-627(a) of the KCPA, which states in pertinent part, "No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction.  An unconscionable act or practice violates this act whether it occurs before, during or after the transaction."

      i. By calling Plaintiff two-hundred and five (205) times after being told not to call on several different occasions the Defendant acted in an unconscionable manner, and therefore, violated the KCPA.

      ii. By continuously calling Plaintiff after being told that (1) Plaintiff was going through a financial difficulty, (2) that Plaintiff had gone through a divorce and could not make any payments on her bills, and (3) that the harassing phone calls were frustrating, the Defendant acted in an unconscionable manner, and therefore, violated the KCPA.

54. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay an alleged debt.

55. As a result of the foregoing violations of the KCPA act, 50-623 et seq., Defendant is liable to Plaintiff for actual damages or statutory damages, whichever one is greater, and attorney fees.

## COUNT III

### (Intrusion Upon Seclusion)

56. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

57. Restatement of the Law, Second, Torts § 652(b) defines intrusion upon seclusion as, "One who intentionally intrudes…upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

58. Defendant violated Plaintiff's privacy. Defendant's violations include, but are not limited to, the following:

    a. Defendant intentionally intruded, physically or otherwise, upon Plaintiff's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite numerous requests for the calls to cease.

    b. The number and frequency of the telephone calls to Plaintiff by Defendant after several requests for the calls to cease constitute an intrusion on Plaintiff's privacy and solitude.

    c. Defendant's conduct would be highly offensive to a reasonable person as Plaintiff received calls that often-interrupted Plaintiff's work and sleep schedule.

    d. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

59. As a result of Defendant's violations of Plaintiff's privacy, Defendant is liable to Plaintiff for actual damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Amy Piepenbring respectfully requests judgment be entered against Defendant, Capital One Bank (USA), N.A., for the following:

    A. Statutory damages up to $10,000.00 per violation pursuant to K.S.A. § 50-636(a);

    B. Actual damages pursuant to K.S.A. § 50-634(b);

    C. Cost and reasonable attorneys' fees pursuant to K.S.A. § 50-634(e);

    D. Statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

    E. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

F.   Any other relief that this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a trial by jury in this action.

RESPECTFULLY SUBMITTED,

Dated: November 6, 2018

By: /s/ *JD Haas*_____
JD Haas, Esq.
**J D Haas & Associates, PLLC**
9801 Dupont Avenue South, Suite 430
Bloomington, MN 55431
T: (952) 345-1025
F: (952) 854-1665
E: jdhaas@jdhaas@.com

Attorneys for Plaintiff,
*Amy Piepenbring*